UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON JACKSON,

         Plaintiff,         Case No. 1:14-cv-780

v.         Honorable Janet T. Neff

DANIEL H. HEYNS et al.,

         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because the allegations either fail to state a claim or are frivolous.

**Factual Allegations**

Plaintiff presently is incarcerated at the Macomb Correctional Facility (MRF) but complains of events that also occurred at the Richard A. Handlon Correctional Facility (MTU). In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Daniel H. Heyns, MDOC Health Director M. Davis, MTU Warden DeWayne Burton, MTU former Warden C. Stoddard,[1] MRF Warden Unknown Romanowskey, MTU Deputy Warden Shawn Young, MRF Deputy Warden Unknown Scott, MTU Psychiatrist Armando Santiago, MTU Nurse Sherry Unknown Party #1 (Nurse Sherry), MTU Nurse Mark Unknown Party #2 (Nurse Mark) and MTU Food Service Director Unknown Rockefeller.

Plaintiff first alleges that certain Defendants have experimented on his body. Plaintiff complains that MDOC Director Heyns and MTU Warden Burton experimented on Plaintiff's brain, as follows (verbatim):

> [T]hey took the ureter from the end that go to my bladder and carry it up to my brain. There pressure in the urinary system and inside the glomerulus that forces fluid out of the blood through its leaky capillary walls, waters, salts, and other small molecules go through ureter that carry water like urine to my brain. And it waters my brain down every so often that I can feel run down my brain. I don't know why I feel this seriously sensation over my brain and thats how I know they gave me meningtis.

(Compl., docket #1, Page ID#5.) Plaintiff further claims that Heyns and Burton allowed MTU Deputy Warden Young to experiment on Plaintiff by placing some kind of substance in the shower that coats a person's skin so when Plaintiff exercises, his sweat glands do not work. (*Id.*, Page ID#11.) Moreover, Plaintiff states that Heyns and MRF Warden Romanowskey allowed MRF

---

[1]From the allegations in Plaintiff's complaint, it appears that Warden Stoddard was previously the Warden at MTU.

Deputy Warden Scott to "experiment on me by appl[ying] pressure to my ear in a way that put's tremendous[] pain to my right ear and [one-half] of my face." (*Id*.)

Plaintiff also complains that MDOC Director Heyns and MTU Warden Burton allowed MTU Deputy Warden Young to expose Plaintiff, and other prisoners,[2] to "foreign-born resident[s] tak[]ing home in MDOC facilit[ies]. . . . There is a lot of them and little one[s] too. And one hurt my hand in my cell. They [are] black like the black man in America[]." (*Id*., Page ID#7.)

Plaintiff further raises several claims concerning the food served at MTU. Plaintiff first alleges that MDOC Director Heyns, MTU Warden Burton and MTU former Warden Stoddard allowed MTU Deputy Warden Young to place substances that cause cancer and a hole in a person's stomach in Plaintiff's dining hall food and in the food that Plaintiff purchased from the commissary. Plaintiff also complains that Defendants Heyns, Burton and Stoddard permitted Young to have food service place an "oily substance" in the dining hall food and in the food Plaintiff purchased from the commissary so that the blood flow in Plaintiff's veins slowed down. (*Id.*, Page ID#9.) As a result, Plaintiff complains that he gained weight. After Plaintiff was transferred to the Macomb Correctional Facility, Plaintiff complains that Defendants Heyns and MRF Warden Romanowskey allowed MRF Deputy Warden Scott to put a "hot substance" in his vegan meals. (*Id.*, Page ID#10.)

---

[2]Plaintiff has referenced several of his claims as class action claims, which the Court construes as a request for class certification. (Compl., docket #1, Page ID#6.) For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not appropriate representative of a class. Therefore, the Court will deny Plaintiff's request for class certification.

Plaintiff further complains that MTU Nurses Sherry and Mark injected Risperidone[3] into his arm muscle so that Plaintiff was swollen for days and "when [he moved his] biceps, [his whole] arm fe[lt] like it [was] going to collapse and pain [ran] all the way [down] to the tendons when my arm or biceps contract[ed]" in violation of his Eighth Amendment rights. (Compl., Page ID##17, 19.)  After Plaintiff wrote grievances on Nurses Sherry and Mark, Plaintiff alleges that they retaliated by continuing to administer the injections in Plaintiff's arm muscle in violation of his First Amendment rights.  Plaintiff also wrote to MDOC Health Director M. Davis about MTU Nurses Sherry and Mark to no avail.

Plaintiff complains that, after he filed four lawsuits in federal court, MTU Deputy Warden Young placed "two substances that ke[pt] [Plaintiff] from eating in the chow hall" in his food, in violation of his First Amendment rights.  (*Id.*, Page ID#20.)  Plaintiff also alleges that Young had Food Service Director Rockefeller "perform damnable acts on chow hall food" in violation of his First Amendment rights.  (*Id.*)  Even though other inmates have brought food to him, Plaintiff alleges that he has lost over thirty pounds and experiences stomach pain and headaches from not eating in violation of his Eighth Amendment rights.

Reading Plaintiff's complaint liberally, *see Haines*, 404 U.S. at 520, Plaintiff also alleges that (1) MDOC Director Heyns and MTU Warden Burton engaged in a conspiracy with Psychiatrist Santiago to diagnose and treat Plaintiff as mentally ill to cover up the wrongdoing by the MDOC and mental health individuals; and (2) MDOC Director Heyns, MTU Warden Burton and MTU Deputy Young engaged in a conspiracy by instructing MTU Nurses Sherry and Mark to torture Plaintiff by giving him shots.

---

[3]Risperidone is an antipsychotic drug mainly used to treat schizophrenia and bipolar disorder.  *See* http://en.wikipedia.org/wiki/Risperidone (accessed on Mar. 18, 2015).

For relief, Plaintiff requests monetary damages.

**Discussion**

I. Frivolous Claims

A claim may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir.1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. The Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.*, 490 U.S. at 327. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts. *See Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1198-99. An *in forma pauperis* complaint may not be dismissed, however, merely because the court believes that the plaintiff's allegations are unlikely. *Id.*

A majority of Plaintiff's claims lack a rational basis in fact. For example, Plaintiff's claims that MDOC Director Heyns and MTU Warden Burton experimented on Plaintiff's brain by redirecting his ureter to his brain and allowed Plaintiff to be exposed to "foreign-born residents" that Heyns and Burton permitted MTU Deputy Warden Young to expose Plaintiff to some sort of

substance that coats Plaintiff's skin in the shower to inhibit his sweat glands; and that Heyns and MRF Warden Romanowskey allowed MRF Deputy Warden Scott to experiment on Plaintiff's ears. (Compl., Page ID#7.) Likewise, several of Plaintiff's food allegations are wholly incredible, including his allegations that Defendants Stoddard, Heyns and Burton permitted Young to place substances in Plaintiff's food that cause cancer and a hole in a person's stomach and allowed food service to place an "oily substance" in Plaintiff's food to slow Plaintiff's blood flow; that Heyns and Romanowskey let Scott place a "hot substance" in Plaintiff's vegan meals; and that Young placed "two substances [in Plaintiff's food] that ke[pt] [Plaintiff] from eating in the chow hall" so that he has lost over thirty pounds and experienced stomach pain and headaches from not eating. (*Id.*, Page ID##9, 10, 20.) The Court will dismiss all of these claims because they are frivolous. *See Burnes v. Clinton*, No. 00-3208, 2000 WL 1800510, at *1 (6th Cir. Nov. 30, 2000) (complaint alleging that President Clinton and various other high-ranking federal officials were subjecting her to electronic surveillance, mind-reading, and remote torture due to her bisexuality was properly dismissed as frivolous); *Graves v. Cohen*, No. 99-4476, 2000 WL 1720647, at *1 (6th Cir. Nov. 7, 2000) (plaintiff's claim concerning the AIDS virus being injected into the American population by the Pentagon was properly dismissed as frivolous); *Dowell v. Tennessee*, No. 92-6125, 1993 WL 169052, at *1 (6th Cir. May 18, 1993) (affirming district court's dismissal of claims of conspiracy to inflict emotional distress as fantastic and delusional).

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment obligates prison authorities to provide medically necessary medical care, including mental health care, to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976); *Gov't of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. Apr. 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to

> be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff alleges that MTU Nurses Sherry and Mark injected Risperidone into Plaintiff's muscle so that Plaintiff was swollen for days and "when [he moved his biceps], [his whole] arm fe[lt] like it [was] going to collapse and pain [ran] all the way to the tendons." (Compl., Page ID#19.)

Assuming Plaintiff satisfies the objective component of an Eighth Amendment claim, Plaintiff fails to allege that MTU Nurses Sherry and Mark acted with deliberate indifference to satisfy the subjective component. Plaintiff was prescribed twenty-five milligrams of Risperidone to be injected every two weeks intramuscularly. (Compl., Page ID#17.) Plaintiff did not agree with the prescription because it was hurting his arm. Temporary discomfort arising from an injection does not rise to the level of an Eighth Amendment claim. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the

conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). Therefore, Plaintiff fails to state an Eighth Amendment claim against MTU Nurses Sherry and Mark.

### B. First Amendment

Plaintiff asserts the following three First Amendment claims: (1) Plaintiff alleges that MTU Nurses Sherry and Mark retaliated by continuing to administer injunctions in Plaintiff's arm muscle after Plaintiff filed grievances against them; (2) Plaintiff alleges that MTU Deputy Warden Young had MTU Food Service Director Rockefeller "perform damnable acts on chow hall food" after Plaintiff filed four lawsuits in federal court; and (3) Plaintiff complains that Young placed "two substances [in his food] that ke[pt] [Plaintiff] from eating in the chow hall." (Compl., Page ID#20.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance and a civil rights action are constitutionally protected conduct under the First Amendment.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (grievance); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996) (grievance); *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (civil rights action).

### 1. MTU Nurses Sherry & Mark

Plaintiff complains that MTU Nurses Sherry and Mark retaliated against Plaintiff for filing grievances by administering injunctions of Risperidone into Plaintiff's arm muscle, which caused Plaintiff pain.  Even though Plaintiff was engaged in protected conduct by filing grievances, Plaintiff fails to meet the second prong of the retaliation test, which is whether he has been subject to adverse action.  The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  MTU Nurses Sherry and Mark did nothing more than inject Plaintiff with Risperidone in his arm muscle in accordance with Plaintiff's mental health treatment.  (*See* Compl., Page ID#17.)  Plaintiff complains that he suffered from several adverse side effects from the injection of the medication into his arm muscle, which would have occurred regardless of who injected him with the medication.  Accordingly, Plaintiff fails to state a claim for retaliation against MTU Nurses Sherry and Mark.

2.     Food Service Director Rockefeller

Plaintiff alleges that MTU Deputy Warden Young had MTU Food Service Director Rockefeller "perform[ed] damnable acts on chow hall food" after Plaintiff filed four lawsuits in federal court. (Compl., Page ID#20.) It is well-recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff merely alleges the ultimate fact of retaliation in his action against Food Service Director Rockefeller. Plaintiff does not elaborate on what "damnable acts" occurred to his chow hall food. (*Id.*, Page ID#20.) Moreover, Plaintiff has not presented any allegations whatsoever to support his conclusion that Defendants Young and Rockefeller retaliated against him because of his filings in federal court. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff, therefore, fails to state a claim for retaliation against MTU Deputy Warden Young and MTU Food Service Director Rockefeller.

### 3. MTU Deputy Warden Young

Plaintiff alleges that MTU Deputy Warden Young placed "two substances [in his food] that ke[pt] [Plaintiff] from eating in the chow hall." (Compl., Page ID#20.) First, Plaintiff does not specifically allege that he was engaged in any protected conduct in his allegations against MTU Deputy Warden Young. The Court, however, will assume that Plaintiff's allegations that he filed four federal lawsuits against Young are also relevant for the instant claim. (*See id.*, Page ID#20.) Nevertheless, Plaintiff still fails the second and third prongs. Plaintiff does not allege what substances were placed in his food that would deter a person of ordinary firmness from engaging in protected conduct. *See Bell*, 308 F.3d at 606. Moreover, Plaintiff has not alleged facts from which to make a reasonable inference that the adverse action was motivated by his filings in federal court. In summary, Plaintiff's allegations against Young are wholly conclusory. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's fails to state a retaliation claim against MTU Deputy Warden Young for placing two substances in his food.

### C. Fourteenth Amendment - Due Process

Plaintiff complains that he wrote to MDOC Health Director Davis about the conduct of MTU Nurses Sherry and Mark to no avail. Plaintiff is essentially complaining that Davis refused to address his grievance. Plaintiff, however, has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams*

*v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Davis' conduct did not deprive him of due process.

Further, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that MDOC Health Director Davis engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

### D. Conspiracy

Plaintiff alleges that MDOC Director Heyns and MTU Warden Burton conspired with MTU Psychiatrist Santiago to label Plaintiff as mentally ill to cover up the wrongdoing by the

MDOC and mental health individuals; and Heyns, Burton and MTU Deputy Young engaged in a conspiracy by instructing MTU Nurses Sherry and Mark to torture Plaintiff by administering shots of Risperidone in Plaintiff's arm muscle.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's claims of conspiracy are conclusory and speculative. While Plaintiff asserts broad conspiracies among Defendants Heyns, Burton and Santiago, and between Defendants Heyns, Burton and Young, Plaintiff has not provided any allegations establishing a link between the alleged conspirators or any agreement between them to deny Plaintiff a constitutional right. Plaintiff has not alleged what constitutional right was violated by labeling Plaintiff as mentally ill. Moreover, the Court previously determined that the Risperidone injections in Plaintiff's arm muscle did not rise to an Eighth Amendment violation. Plaintiff therefore fails to state plausible claims of conspiracy.

### E. Motion for Copies

On July 31, 2014, Plaintiff filed a motion (docket #4) to make copies and have the MDOC pay the Court for copies. Because the Court is dismissing this action, Plaintiff's motion will be denied as moot.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also deny Plaintiff's motion (docket #4) to make copies and have the MDOC pay the Court for copies as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.

Dated:  March 27, 2015                    /s/ Janet T. Neff
                                          Janet T. Neff
                                          United States District Judge